Todd R. Johnston, OSB 992913
tjohnston@hershnerhunter.com
Hershner Hunter, LLP
675 Oak Street, Suite 400
Eugene, OR 97401
Telephone: (541) 686-8511

Eli Segal, PA ID 205845*
esegal@stapletonsegal.com
John S. Stapleton, PA ID 200872*
jstapleton@stapletonsegal.com
Stapleton Segal Cochran LLC
1760 Market Street, Suite 403
Philadelphia, PA 19103
Telephone: (215) 402-6555
* Admitted *Pro Hac Vice*

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**EUGENE DISTRICT**

| | |
|---|---|
| BENJAMIN THOMAS IRWIN AND ANGELA MARIE COLASANTI,<br><br>Plaintiffs,<br><br>v.<br><br>HOLT INTERNATIONAL CHILDREN'S SERVICES, INC.,<br><br>Defendant. | Case No. 6:26-CV-01525-MTK<br><br>Defendant Holt International Children's Services, Inc.'s<br><br>MOTION TO COMPEL MEDIATION AND ARBITRATION<br><br>*Request for Oral Argument* |

**CERTIFICATION**

In compliance with LR 7-1, the parties made a good faith effort through video conferences to resolve the dispute and have been unable to do so.

## MOTION

Pursuant to the Federal Arbitration Act, Defendant Holt International Children's Services, Inc., moves this Court to stay this action and compel Plaintiffs Benjamin Thomas Irwin and Angela Marie Colasanti to pursue their claims in mediation and arbitration in Lane County, Oregon, pursuant to the governing contractual agreements. This motion is supported by the Memorandum of Law below.

## MEMORANDUM OF LAW

### I. Introduction

In their Complaint, Plaintiffs Benjamin Thomas Irwin and Angela Marie Colasanti make serious allegations about the conduct of Defendant Holt International Children's Services, Inc. ("Holt"). Holt vehemently disputes those allegations. The Rules of Civil Procedure, however, require Holt to treat them as true at this procedural stage. Therefore, while this motion focuses exclusively on Plaintiffs' contractual obligation to pursue their claims through mediation and arbitration—non-public proceedings that would protect the privacy of a child whom Plaintiffs have decided not to adopt—the fact that Holt does not rebut Plaintiffs' allegations here should not be taken to mean that Holt agrees with them in any way.

Plaintiffs entered into an International Adoption Services Agreement ("IASA") and a Placement Agreement with Holt, pursuant to which a child in Thailand was referred to and accepted by Plaintiffs for potential adoption. In this lawsuit, Plaintiffs assert twelve counts against Holt—two contract counts and ten tort or statutory counts. But the IASA and Placement Agreement require the parties to use an ADR procedure that includes mediation and binding arbitration in Lane County, Oregon, for all disputes "arising out of or relating to the terms or

performance" of the agreements—unless the dispute falls within a narrow contractual carve-out from the requirement.

Here, all twelve counts are subject to this ADR requirement, as all twelve arise out of or relate to the terms or performance of the agreements, and none falls within the carve-out. The U.S. District Court for the Eastern District of Pennsylvania has already transferred this action to this District, enforcing the parties' contractual agreement to use this county as the forum for disputes "arising under" the IASA or Placement Agreement. To enforce the parties' contractual agreement to use ADR within this county for disputes "arising out of or relating to" the same IASA or Placement Agreement, this Court should now stay this action and compel Plaintiffs to pursue their claims through mediation and arbitration in this county. That outcome would be consistent with what the District Court for the Eastern District of Pennsylvania anticipated, explaining that it was "transfer[ring the case] to the appropriate district court in Oregon, 'where the case will presumably be stayed pending arbitration.' *Shaffer [v. Graybill]*, 68 F. App'x [374,] 377 [(3d Cir. 2003)]." Dkt. 21 (July 23, 2026 Order).

## II. Factual Background

### A. Plaintiffs enter into the IASA and Placement Agreement with Holt.

On February 23, 2021, Plaintiffs executed the IASA with Holt. Compl., ¶ 47 & Ex. 1. The IASA refers to Plaintiffs throughout as "AP," which is shorthand for "prospective Adopting Parent(s)." Compl., Ex. 1 p. 1. Section 2.1 summarizes Holt's obligations under the IASA:

> **2.1 General Obligations**—In consideration of payment by AP of the required fees and of the agreements contained herein, Holt agrees to provide adoption services to AP as specified in this agreement. Such adoption services generally include writing and/or reviewing an adoption study of AP, attempting to refer a child for potential adoption, obtaining and supplying to AP available information about any such child, attempting to qualify AP as adoptive parents in the sending country, dealing with foreign authorities and orphanage personnel, attempting to place the child with

> AP for purposes of adoption, providing assistance with travel and immigration requirements, and providing a post-placement or post-adoption study or review.

*Id.* § 2.1.

Section 2.1 includes a general reference to Holt "obtaining and supplying to AP available information about any such child." Sections 7.2., 20.5, and 20.6 detail the scope of Holt's ability and obligations to do so. Given their relation to Plaintiffs' claims in this lawsuit, Holt quotes each of those three Sections in its entirety here:

> **7.2 Available Information Regarding Referred Child**—Holt will make reasonable efforts to obtain all available medical, psychological, and historical records concerning the referred child. All information obtained by Holt regarding the referred child, including available photographs and the results of any HIV and AIDS test, will be provided to AP. Nothing in this subsection, or anywhere else in this agreement, shall be construed to create any obligation on the part of Holt to conduct any assessment, evaluation, testing, or screening of any child. In most situations Holt does not have the opportunity to observe, test, or evaluate a child, and must rely upon third parties in the sending country to provide information about the child. Holt can provide to AP only such information as is reasonably obtainable from such third parties. AP hereby acknowledges and agrees that it is possible that such third parties in the sending country (a) may not be aware of medical, developmental or behavioral issues of a child; (b) may overlook or fail to note signs or symptoms or to provide a child's relevant history (c) may unknowingly or carelessly provide erroneous information; (d) may not be able to provide information or observations about medical, developmental, or behavioral issues that become apparent on or after the child's placement with AP and/or (e) may not be aware of aspects of a child's history that have not been disclosed prior to placement (and which may be disclosed by the child only after placement). The DISCLAIMERS/RELEASES provisions of this agreement expressly apply to this subsection.
>
> **20.5 RELEASE FOR CONDITION OF CHILD**—Holt does not and cannot guarantee, and makes no warranty or representation, express or implied, that a child of any particular age, sex, condition, or nationality, or from any particular orphanage or province, will be assigned to or placed with AP.
>
> The following are risks to the health and wellbeing of any adopted child: (1) poor prenatal care, (2) poor care by parents, caretakers, or guardians, (3) institutionalization (where applicable), (4) poor medical care, and (5) poor medical assessment. In addition, a child may be too young to properly diagnosis or assess many medical or psychological problems.

If you adopt a child who was institutionalized in another country, that child is likely to have undiagnosed medical and psychological problems including, but not limited to, developmental delay, malnutrition, and/or behavioral problems. You probably will not be fully aware of the nature and extent of the child's problems until after the adoption is finalized. Even if the child was not institutionalized, most children adopted from another country are likely to have some undiagnosed medical, psychological, or other problems.

For these reasons, Holt does not and cannot guarantee, and makes no warranty or representation, express or implied, concerning the medical or psychological condition of any child. AP acknowledges that Holt is not and cannot be responsible for any such conditions or problems.

Prior to placement, a child may have been provided with medical examinations, tests, and/or inoculations. Medical professionals may have declared the child "healthy," or free of serious health problems. AP may have specified that AP expects a "healthy" child. AP acknowledges and understands that none of these circumstances guarantees a healthy child. Holt cannot guarantee the results or accuracy of any examinations, tests, inoculations, or assessments.

AP further acknowledges and understands that in some cases, Holt may have arranged for a child's medical or psychological examination, while in other situations, a child may not have been provided with any medical examination or testing. In either event, Holt does not conduct any independent assessment, testing, screening, or evaluation of any child, and Holt has no knowledge of any child's actual medical or psychological condition other than what has been reported to Holt or may appear in any medical records, all of which will be conveyed to AP.

**RELEASE:** AP hereby releases Holt and holds Holt harmless from any and all responsibility or liability for any type of injury, harm, damage, or loss in any way relating to or arising out of the physical, psychological, or emotional condition of any child assigned to, placed with, or adopted by AP, regardless of when such injury, harm, damage, or loss is known or discovered.

**20.6 RELEASE FOR CHILD'S RECORDS AND INFORMATION**—Holt will make reasonable efforts to provide AP with all available medical, psychological, historical, and other records and information concerning the child. Generally, such records and information originate with persons, agencies, and entities outside Holt. Holt does not and cannot investigate or confirm the information obtained or provided. The information obtained or provided may be inaccurate and/or incomplete. Translations of foreign language documents may be inaccurate. Therefore, Holt does not guarantee, and makes no warranty, express or implied, concerning, the accuracy, validity, applicability, or completeness of any information, medical, psychological, historical, or other records or data regarding any child.

> **<u>RELEASE</u>:** AP hereby releases Holt and holds Holt harmless from any and all responsibility or liability for any type of injury, harm, damage, or loss in any way relating to or arising out of any medical, psychological, historical, or other records, data, or information regarding any child assigned to, placed with, or adopted by AP, or any translation of such records, data, or information.

*Id.* §§ 7.2, 20.5, 20.6.

After executing the IASA, Plaintiffs reviewed the children available for adoption on Holt's "Waiting Child List." Compl. ¶ § 47. From among those children, Plaintiffs identified K.R., who was part of Holt's Thailand Special Needs Project and lived in a government-run orphanage in Songkhla, Thailand. *Id.* ¶¶ 47, 50. Holt provided Plaintiffs with records that it had obtained regarding K.R., which Plaintiffs reviewed with physicians from the International Adoption Medicine Clinic at Children's Hospital of Philadelphia. *Id.* ¶¶ 51, 55. Plaintiffs then decided that they wanted to adopt K.R. *Id.* ¶ 57.

On June 24, 2021, Plaintiffs executed a Placement Agreement with Holt with respect to K.R., which also refers to Plaintiffs throughout as "AP." *Id.* ¶ 58 & Ex. 5. The Placement Agreement contemplates that Plaintiffs would take physical custody of K.R. in Thailand and bring her back to the United States (i.e., "placement"); that Holt would provide various post-placement monitoring, supervision, and evaluation services; and that, after completion of a probationary period, Plaintiffs would finalize their adoption of K.R. in the United States. *See id.*, Ex. 5 at Recitals 2–4 & §§ 3, 7, 8.2, 8.3, 8.4. Within Section 6, titled "Care of the Child," the Placement Agreement provides that "[f]rom the time of placement, and at all times thereafter, AP is solely responsible for the physical, emotional, educational, and spiritual care, safety, development, and well-being of the child . . . . includ[ing] paying any and all costs, fees or expenses related to the child." *Id.* § 6.1. In addition, Section 10, titled "Disruption," sets forth the obligations of the parties—including the extent of Plaintiffs' continued financial responsibility for the "Care of the

Child," *id.* § 10.7, and the extent of Holt's responsibility for the re-placement of the child, *id.* § 10.5—if Plaintiffs or Holt were to disrupt K.R.'s placement with Plaintiffs before Plaintiffs finalized their adoption of her.

**B. The IASA and Placement Agreement contain and incorporate an ADR procedure that requires mediation and arbitration in Lane County, Oregon, and a forum selection clause that also points to Lane County, Oregon.**

While the Placement Agreement and IASA are separate documents, the Placement Agreement incorporates the IASA:

> 2. <u>International Adoption Services Agreement</u>
>
> All the provisions of the International Adoption Services Agreement including but not limited to the recitals, disclaimers, releases, dispute resolution provisions, and provisions concerning contract construction are hereby made a part of this agreement and are as fully enforceable as though those provisions were expressly set forth herein. In the event of any conflict between the provisions of the International Adoption Services Agreement and the provisions contained herein, the terms of this agreement are controlling.

*Id.* § 2.

The "dispute resolution provisions" that the Placement Agreement expressly incorporates are contained in Sections 15.1–15.4 of the IASA. Those provisions require mediation and binding arbitration in Lane County, Oregon, for any dispute "arising or of or relating to the terms or performance" of the agreement:

> **15.1 <u>Grievance Procedure</u>**—Any and all complaints or claims by AP arising out of or relating to the terms or performance of this agreement must be presented and pursued in accordance with Holt's written "Client Grievance Procedure."[1] . . . Except as otherwise specifically provided in this agreement or in the Placement Agreement, any complaint or claim of AP which cannot be resolved by the Client Grievance Procedure, and any other dispute, controversy or claim arising out of or

[1] Holt is not asking this Court to compel compliance with this first step in the contractual ADR procedure, having made clear in correspondence to Plaintiffs before they filed this lawsuit that Holt is willing to deem the first step satisfied and to proceed directly to the second step. Holt has always insisted on compliance with the second (mediation) and third (arbitration) steps.

relating to the terms or performance of this agreement which cannot be resolved by good faith negotiation among the parties, must be resolved as specified in the following subsections.

**15.2** **Mediation**—The parties agree to attempt in good faith to resolve any unresolved dispute, claim or controversy via mediation. . . . The mediation process shall include at least one session in which the parties are in the same room and are able to directly address and listen to one another.

**15.2.1** **Mediators**—Any mediation required under this agreement shall be conducted by an experienced attorney or judicial officer in Lane County, Oregon . . . .

**15.3** **Arbitration**—If mediation fails to resolve the dispute, claim, or controversy it must be resolved by arbitration in Lane County, Oregon, pursuant to all applicable rules then in effect in the Circuit Court of Oregon for Lane County. . . . Any decision of the arbitrator must be reduced to and entered as final judgment in the appropriate Lane County Oregon court. Such award and judgment constitutes a final and binding adjudication of all matters submitted to arbitration. The parties expressly agree to waive any and all rights to appeal the arbitrator's decision. . . .

**15.4** **Costs and Attorney Fees**

**15.4.1** **Mediation**—Holt will pay the entire mediator's fee for the first two hours of mediation. Each party is responsible for one-half of any mediator's fees incurred thereafter, and one-half of any administrative fees charged by the mediator.

**15.4.2** **Arbitration**—Each party is responsible for one-half of the total fees and expenses charged by the arbitrator.

**15.4.3** **Other Costs and Attorney Fees**—During all stages of any grievance, negotiation, mediation, or arbitration process, and at all other times, each party is solely responsible for any and all attorney fees, costs, and disbursements that party has incurred on its own behalf.

*Id.*, Ex. 1. §§ 15.1–15.4.3.

The Placement Agreement includes a narrow carve-out provision that excludes from this ADR procedure three discrete categories of claims:

10.9 Dispute resolution Because the well-being of a child may be at stake, [1] any disruption, initiated by either party, of an adoptive placement exercised in accordance with this agreement is not subject to the grievance and dispute resolution procedure contained in the International Adoption Services Agreement

> (“the grievance and dispute resolution procedure”). Similarly, [2] any litigation or dispute with regard to custody or guardianship of the child that may arise out of any disruption or termination of this agreement, and [3] AP’s financial obligations with regard to the child under Sections 5 and 8.2 of this agreement are not subject to the grievance and dispute resolution procedure. However, any claim by AP for damages attendant to or arising out of any disruption or termination of this agreement remains subject to the grievance and dispute procedure.

*Id.*, Ex. 5 § 10.9.[2]

The IASA—and, by extension, the Placement Agreement—also points to Oregon in a choice of law and forum selection provision:

> **15.5 <u>Choice of Law and Venue</u>**—This agreement - including all supplements, modifications, and other documents incorporated herein - and all rights, obligations, and disputes arising out of it is governed by and construed consistent with Oregon law. The parties agree that venue for any dispute arising under this agreement is in Lane County, Oregon, or any other jurisdiction in which both parties voluntarily appear.

*Id.*, Ex. 1 § 15.5; *see also id.*, Ex. 5 § 2.

### C. Plaintiffs spend more than two weeks with K.R. in Thailand, bring her back to the United States, and later decide not to adopt her.

On April 22, 2023, Plaintiffs travelled to Thailand to meet K.R. and bring her back to the United States. Compl. ¶¶ 71–73, 97–98. According to the Complaint, while in Thailand, it allegedly “became clear to Plaintiffs that Holt had misrepresented, omitted, and/or distorted key, material information about K.R., particularly concerning her medical, psychological and behavioral complications.” *Id.* ¶ 6. Again, *Holt vehemently disputes this allegation but treats it as*

---

[2] Holt has inserted bracketed numbers within this otherwise verbatim quotation of Section 10.9 to delineate the carve-out provision’s three categories.

*true for purposes of this motion only.* Plaintiffs assert that, "[w]ithin those first few weeks that K.R. was with the family in Thailand, the child attempted to strangle Plaintiffs in front of their daughter, attempted to jump off an eleven-story hotel balcony, destroyed property, attempted to run away, and repeatedly engaged in self harm" and that "K.R.'s behavior became so dangerous and extreme that the family could not safely be in public together." *Id.* ¶ 7.

From Thailand, Plaintiffs consulted with various medical providers in the United States regarding "whether to bring [K.R.] to the United States for care, or to leave Thailand without her." *Id.* ¶ 84. On May 9, 2023, Holt reminded Plaintiffs, "[Y]ou do not have to do this. You can leave Thailand without her." *Id.*, Ex. 12. Despite their concerns, however, Plaintiffs decided to return to the United States with K.R. and left Thailand with her on May 10, 2023. *Id.* ¶¶ 96–98. In the United States, K.R. continued to demonstrate "violence, aggression, and dangerous behaviors." *Id.* ¶ 99. Plaintiffs allege that, in light of K.R.'s behavioral challenges, they ultimately chose not to proceed with adopting her. *Id.* ¶¶ 120, 126, 127.

**D. Plaintiffs sue Holt in United States District Court for the Eastern District of Pennsylvania, asserting contract claims based on specific provisions of the IASA and Placement Agreement and asserting tort and statutory claims based on Holt's alleged misrepresentation of or failure to disclose information about K.R.'s condition and history.**

Despite the above ADR and forum-selection provisions, Plaintiffs filed this lawsuit against Holt in the United States District Court for the Eastern District of Pennsylvania on September 5, 2025. The twelve counts in the Complaint can be divided into two categories: (1) two contract counts and (2) ten tort or statutory counts, all of which, as discussed in the Legal Analysis section below, "aris[e] out of or relat[e] to the terms or performance" of the IASA or the Placement Agreement. *See* Compl., Ex. 1 § 15.5, Ex. 5 § 2.

First, in **Count 1** and **Count 8**, Plaintiffs seek a declaratory judgment that their financial obligations under Sections 6 and 10.7 of the Placement Agreement have concluded, *id.* ¶¶ 163–65; claim that Holt breached Sections 2.1, 7.2, and 20.6 of the IASA by allegedly misrepresenting or failing to disclose to Plaintiffs information concerning K.R.'s condition and history, *id.* ¶¶ 216–19; and claim that Holt breached Section 10.5 of the Placement Agreement by allegedly failing to make reasonable efforts to re-place K.R, *id.* ¶¶ 220–21.

Second, in **Counts 2–7** and **Counts 9–12**, Plaintiffs assert tort and statutory claims that are based on the same fundamental allegation as their claim for breach of the IASA: that Holt allegedly misrepresented or failed to disclose information concerning regarding K.R.'s condition and history.[3]

[3] **Count 2**: international or fraudulent misrepresentation ("167. Defendant Holt made representations to Plaintiffs both orally and in writing concerning the existence and extent of K.R.'s medical, behavioral, and psychological complications. . . . 170. Upon information and belief, Defendant Holt's representations concerning K.R. were made falsely and recklessly, with knowledge of that falsity or recklessness as to whether such representations were true or false.").

**Count 3**: intentional or fraudulent non-disclosure/concealment ("176. Defendant Holt concealed from and/or failed to disclose information to Plaintiffs, at multiple points in time, concerning the existence and extent of K.R.'s medical, behavioral, and psychological conditions and complications, as well as abuse occurring within multiple orphanages serviced by Holt's Thailand Special Needs Project.").

**Count 4**: intentional infliction of emotional distress ("185. The knowing or reckless provision of false information by adoption agencies or intermediaries, like Defendant Holt, to prospective adoptive parents, like Plaintiffs, so as to induce them to accept a particular child is reprehensible. Additionally, false or misleading information about the medical or psychological conditions or prior physical abuse of children placed for adoption is likely to have devastating results and is substantially certain to result in emotional harm to prospective adoptive parents, like Plaintiffs.").

**Count 5**: negligent infliction of emotional distress ("193. Defendant Holt breached its duty of care owed to Plaintiffs by misrepresenting, concealing, failing to reasonably investigate, and/or failing to disclose critical and material information regarding K.R.'s prior history, including, but not limited to, K.R.'s severe psychological trauma, K.R.'s history of violent and destructive behavior, K.R.'s history of trauma, and K.R.'s diagnosed or otherwise readily apparent behavioral and/or psychological disorders, despite Holt's being in possession of, or having access to, such information.").

**E. The United States District Court for the Eastern District of Pennsylvania transfers the action to this Court.**

On November 7, 2025, Holt moved to dismiss the Complaint without prejudice, based on the contractual ADR and forum-selection provisions. Dkt. 9. On July 22, 2026, the United States

---

**Count 6**: negligent misrepresentation ("199. Despite its duty to do so, Defendant Holt negligently misrepresented and/or omitted material facts and information about K.R. which were known to it, or which it should have discovered through the exercise of reasonable care and investigation. These misrepresented and/or omitted facts and information include, but are not limited to, K.R.'s: a. History of severe, aggressive, and destructive behaviors; b. Severe psychological/psychiatric disorders; and c. Experience with psychological, physical, and/or sexual abuse or trauma.").

**Count 7**: negligent non-disclosure/concealment ("Despite its duty to do so, Defendant Holt negligently concealed from or failed to disclose to Plaintiffs material facts and information about K.R. which were known to it, or which it should have discovered through the exercise of reasonable care and investigation. These concealed and/or undisclosed facts and information include, but are not limited to, K.R.'s: a. History of severe, aggressive, and destructive behaviors; b. Severe psychological/psychiatric disorders; and c. Experience with psychological, physical, and/or sexual abuse or trauma.").

**Count 9**: violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("229. Defendant Holt knowingly represented to Plaintiffs, as K.R.'s prospective adoptive parents, the nature of K.R.'s medical history, psychological profile, behavioral history, and history of abuse, including representing that K.R. did not exhibit extreme or severe behavioral complications, when Defendant Holt knew that such representations were false and misleading and created a high likelihood that Plaintiffs would misunderstand K.R.'s profile and needs.").

**Count 10**: negligence (234. Defendant Holt owed a duty to provide Plaintiffs, as K.R.'s prospective adoptive parents, with truthful, complete, and accurate records and information pertaining to K.R.'s background, including but not limited to K.R.'s medical history, psychological profile, behavioral history, and history of abuse, that was in Defendant Holt's possession or control or that was reasonably available to Defendant Holt in a reasonable amount of time. 235. Defendant Holt breached its duty to provide such truthful, complete, and accurate information and records to Plaintiffs, as K.R.'s prospective adoptive parents. negligent placement of adoptive child, and wrongful adoption.").

**Count 11**: negligent placement of adoptive child ("Defendant Holt negligently misrepresented, concealed, and/or failed to disclose to Plaintiffs material information concerning K.R.'s background, including but not limited to K.R.'s medical history, psychological profile, behavioral history, and history of abuse.").

**Count 12**: wrongful adoption ("246. At the time Defendant Holt made the aforementioned statements and representations referenced throughout this Complaint regarding K.R.'s medical history, psychological profile, and behavioral history, and/or prior to K.R.'s placement with Plaintiffs, Defendant Holt knew or should have known that such statements, representations, and omissions were false, inaccurate, misleading, and/or materially incomplete.").

District Court for the Eastern District of Pennsylvania transferred the action to this Court based on the forum-selection provision and, because the agreements call for arbitration in Lane County, Oregon—which is not within the Eastern District of Pennsylvania—left it for this Court to rule on the ADR issue:

> Here, the Court finds that the parties agreed upon forum selection provision is valid. The record reflects no evidence of unreasonableness or improper conduct during the contract's formation. Moreover, the forum selection provision is enforceable because the current dispute falls squarely within its scope. Plaintiff has failed to demonstrate that enforcing the forum selection clause is unreasonable. It therefore follows that the Court will uphold the parties' agreement and directs that this action be brought in a court with jurisdiction in Lane County, Oregon. Because this Court cannot compel arbitration outside its own jurisdiction, 9 U.S.C. § 4, this Court cannot rule on the arbitrability of Plaintiff's claims. Instead, after giving the parties a chance to be heard, the Court may either dismiss the case or transfer it to the appropriate district court in Oregon, "where the case will presumably be stayed pending arbitration." *Shaffer [v. Graybill]*, 68 F. App'x [374,] 377 [(3d Cir. 2003)].

Dkt. 21 at 2 n.1.

Holt now moves this Court to stay this action and compel Plaintiffs to pursue their claims through mediation and binding arbitration in Lane County, Oregon.

## III. <u>**Legal Analysis**</u>

The Federal Arbitration Act "declares a 'liberal federal policy favoring arbitration.'" *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Consistent with this policy, the Act "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Gamble v. Penney Opco LLC*, 791 F. Supp. 3d 1203, 1207 (D. Or. 2025) (internal quotation marks omitted). Thus, this Court has explained, "[i]f the issue is referable to arbitration under the agreement, then the court must direct the issue to arbitration and stay the trial." *Id.* The District Court for the Eastern District recognized this when it transferred the matter to this District. *See* Dkt. 21 at 2 n.1 ("Because this Court cannot compel arbitration outside its own

jurisdiction, 9 U.S.C. § 4, this Court cannot rule on the arbitrability of Plaintiff's claims. Instead, after giving the parties a chance to be heard, the Court may either dismiss the case or transfer it to the appropriate district court in Oregon, 'where the case will presumably be stayed pending arbitration.' *Shaffer [v. Graybill]*, 68 F. App'x [374,] 377 [(3d Cir. 2003)].").

While the "liberal federal policy favoring arbitration" provides the backdrop, "[i]n determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 510 (9th Cir. 2023). If those state-law principles do not definitively resolve the issue, the liberal federal policy then tips the scales in favor of arbitration. *See Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020) ("In the face of any ambiguity, 'under the federal presumption in favor of arbitration, an arbitrator would have jurisdiction to arbitrate claims.'" (quoting *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1285 (9th Cir. 2009))); *see also Gamble*, 791 F. Supp. 3d at 1207 ("[C]ourts strongly favor arbitration and broadly construe arbitration clauses.").

Here, Section 15.5 of the IASA—which the Placement Agreement incorporates—provides that "[t]his agreement - including all supplements, modifications, and other documents incorporated herein - and all rights, obligations, and disputes arising out of it is governed by and construed consistent with Oregon law." Compl., Ex. 1 § 15.5, Ex. 5 § 2. Under Oregon law, "[i]n addition to the ordinary rules of contract construction, special rules are applicable to the construction of arbitration agreements." *Livingston v. Metro. Pediatrics, LLC*, 227 P.3d 796, 803 (Ore. App. 2010). That is because "Oregon, like the federal courts, recognizes a presumption in favor of arbitrability." *Id.* The relevant inquiry under Oregon contract law "is whether the arbitration clause is susceptible to an interpretation that covers the parties' dispute . . . *i.e.*, whether the clause can *plausibly* be interpreted to require arbitration." *Id.* (emphasis in original).

Here, the answer to that question is "yes" as to all twelve counts in the Complaint. The Court should therefore stay this action and order Plaintiffs to proceed to mediation and arbitration in Lane County, Oregon.

**1. All of Plaintiffs' claims fall within the contractual ADR requirement because all twelve "aris[e] under or relat[e] to the terms or performance" of the IASA or the Placement Agreement.**

In transferring the action to this District, the District Court for the Eastern District of Pennsylvania concluded that "the current dispute falls squarely within [the] scope" of the forum-selection clause, Dkt. 21 at 2 n.1—a clause that applies to "any dispute arising under" the IASA or the Placement Agreement, *see* Compl. Ex. 1 § 15.5, Ex. 5 § 2. It necessarily follows that the current dispute also consists of claims "arising out of or relating to the terms or performance of" the IASA or the Placement Agreement. Compl., Ex. 1 § 15.1. Indeed, the twelve counts in the Complaint are all claims "arising out of" *and* "relating to the terms or performance" of the agreements. Starting with the two contract counts, Counts 1 and 8 are expressly based on specific provisions in the agreements. Count 1 seeks a declaratory judgment that Plaintiffs' financial obligations under Sections 6 and 10.7 of the Placement Agreement have concluded and Count 8 asserts breaches of Holt's obligations under Sections 2.1, 7.2, and 20.6 of the IASA and Section 10.5 of the Placement Agreement. *See* page 11 above. Count 1 thus "aris[es] out of" and "relat[es] to the terms or performance of" the Placement Agreement, and Count 8 "aris[es] out of" and "relat[es] to the terms or performance of" the IASA and the Placement Agreement.

The tort and statutory counts likewise all "arise[] out of" and "relat[e] to the terms or performance" of the IASA or Placement Agreement. *See Livingston*, 117 P.3d at 804 (applying Oregon law and describing "arising out of or relating to this Agreement, or the breach thereof" as "expansive language" that requires arbitration for "*any*" dispute, "as long as the subject matter of

the dispute arises out of or relates to the . . . agreement" (emphasis in original)); *see also In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 523 (3d Cir. 2019) (applying New Jersey law to agreement to arbitrate any dispute "arising out of or relating to this agreement" and explaining that "[s]uch broad clauses have been construed to require arbitration of any dispute between the contracting parties that is connected in any way with their contract"); *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (applying federal law and explaining that "forum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some logical or causal connection to the agreement" and that "[t]he dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract" (internal quotation marks omitted)).

Again, all ten tort and statutory counts are based on the allegation that Holt mispresented or failed to disclose to Plaintiffs information about K.R.'s condition and history before she was placed with them. *See* pages 11-12 above. The only reason why Holt had any obligation—be it contractual or otherwise—to obtain and provide Plaintiffs with information about K.R. was the fact that Holt agreed in the IASA to help Plaintiffs identify a child for potential adoption and agreed in the Placement Agreement to the placement of K.R. with Plaintiffs. All ten claims thus "arise[] out of" and "relat[e] to the terms or performance" of the IASA and Placement Agreement. In addition, in Sections 2.1, 7.2, 20.5, and 20.6, the IASA addresses extensively the issue of Holt's obligations to obtain and provide Plaintiffs with information concerning a referred child's condition and history. *See* pages 3-6 above. All ten tort and statutory claims thus also "relat[e] to the terms or performance" of those specific Sections of the IASA. *See Remicade*, 938 F.3d at 523 (explaining that "relating to" requires only "some logical or causation connection"); *Sun*, 901 F.3d at 1086 (same).

### 2. None of Plaintiffs' claims fall within the scope of the Placement Agreement's narrow carve-out from the contractual ADR requirement.

In addition to "arising out of or relating to the terms of the performance of" the IASA or Placement Agreement, Compl., Ex. 1 § 15.1, all twelve counts in the Complaint fall outside of the three discrete categories of claims that Section 10.9 of the Placement Agreement excludes from the contractual ADR requirement, *id.*, Ex. 5 § 10.9.

First, Plaintiffs' claims do not fall within the first category because no count in the Complaint disputes "any disruption, initiated by either party, of an adoptive placement exercised in accordance with [the Placement Agreement]." *Id.* The mere fact that Plaintiffs may have sought to disrupt K.R.'s adoptive placement is not enough to bring any of their claims within the scope of this exclusion—even if some of their claims may arise out of or relate to that disruption effort. Tellingly, while the contractual ADR requirement extends to "any and all complaints or claims . . . arising out of or relating to the terms or performance of this agreement," *id.*, Ex. 1 § 15.1, Section 10.9's first category of claims exempted from that requirement only extends to a "disruption" itself—not to "any and all complaints or claims arising out of or relating" thereto, *id.*, Ex. 5 § 10.9. Further confirming the narrowness of this exclusion, Section 10.9 itself specifies that none of the three categories of exempted claims includes "any claim by AP for damages attendant to or arising out of any disruption or termination of this agreement." *Id.*[4]

---

[4] In their Complaint, Plaintiffs construe the final sentence of Section 10.9 to mean that the ADR procedure set forth in the IASA and incorporated into the Placement Agreement "applies only to claims 'for damages attendant to or arising out of any disruption or termination of [the Placement Agreement.]" Compl. ¶ 61. That is incorrect. The ADR procedure—including its mediation and arbitration requirements—applies to "[a]ny and all complaints or claims by AP arising out of or relating to the terms or performance" of the IASA or the Placement Agreement, "[e]xcept as otherwise specifically provided in [the IASA] or in the Placement Agreement." *Id.*, Ex. 1 § 15.1, Ex. 5 § 2. Section 10.9 of the Placement Agreement in turn excludes three discrete

Second, Plaintiffs' claims do not fall within the next category of claims that Section 10.9 excludes from the ADR requirement because no count in the Complaint is a dispute "with regard to the custody or guardianship of the child that . . . ar[o]se out of any disruption or termination of [the Placement Agreement]." *Id.* Indeed, as Plaintiffs acknowledge in their Complaint, the issue of the post-disruption custody or guardianship of K.R. has been the subject of separate, non-public dependency proceedings in Pennsylvania state court. Compl. ¶ 156.

Third, as to the last category of claims that Section 10.9 of the Placement Agreement exempts from the arbitration requirement, no count in the Complaint is a dispute "with regard to . . . AP's financial obligations with regard to the child under Sections 5 and 8.2 of [the Placement Agreement]." *Id.*, Ex. 5 § 10.9. Plaintiffs' only financial obligation under Section 5 of the Placement Agreement is for the payment of fees required by authorities in Thailand. *Id.* § 5.1. Section 8.2 does not impose any financial obligations and refers instead to Plaintiffs' obligation to obtain the consent of Holt and the U.S. Secretary of State before finalizing K.R.'s adoption. *Id.* § 8.2. The Complaint does not mention Section 5 or Section 8.2 at all.

* * *

Thus, it is clear under Oregon contract law that the scope of the contractual ADR requirement includes all twelve counts in the Complaint. Moreover, the federal presumption in favor of arbitration further tips the scales to the same conclusion. The Court should therefore stay

---

categories of claims from the ADR procedure, leaving all other qualifying claims undisturbed. *Id.*, Ex. 5 § 10.9. Again, the final sentence of Section 10.9 simply confirms the narrowness of the exceptions by clarifying that, even though disputes over "disruption" are now excluded, "claim[s] for damages attendant to or arising out of any disruption or termination of [the Placement Agreement]" remain subject to the ADR procedure—like all other claims by Plaintiffs "arising out of or relating to the terms of performance" of the IASA or the Placement Agreement. *Id.*

this action and compel Plaintiffs to pursue their claims in mediation and arbitration in Lane County, Oregon.[5]

## IV. Conclusion

For all these reasons, Defendant Holt International Children's Services, Inc., requests that the Court stay this action and compel Plaintiffs to pursue their claims in mediation and arbitration in Lane County, Oregon, as required by the IASA and the Placement Agreement.

DATED: September 9, 2026

HERSHNER HUNTER, LLP

By ***/s/ Todd R. Johnston***
Todd R. Johnston, OSB 992913
tjohnston@hershnerhunter.com

STAPLETON SEGAL COCHRAN LLC
Eli Segal, PA ID 205845*
esegal@stapletonsegal.com
John S. Stapleton, PA ID 200872*
jstapleton@stapletonsegal.com
*Admitted *Pro Hac Vice*

Attorneys for Defendant

[5] In briefing before the District Court for the Eastern District of Pennsylvania, Plaintiffs argued that the ADR procedure to which they agreed is unconscionable because it requires them to travel from Pennsylvania to Oregon for mediation and arbitration. That District Court rejected the notion that holding Plaintiffs to an agreement to travel across the country to pursue their claims is problematic. *See* Dkt. 21 at 2 n.1 ("Here, the Court finds that the parties agreed upon forum selection provision is valid. The record reflects no evidence of unreasonableness or improper conduct during the contract's formation. Moreover, the forum selection provision is enforceable because the current dispute falls squarely within its scope. Plaintiff has failed to demonstrate that enforcing the forum selection clause is unreasonable.").